The Honorable Tom Bradley State Representative, Fifty-Second District State Capitol, Room 174-W Topeka, Kansas 66612-1504
Dear Representative Bradley:
You request our opinion regarding whether an electronic bingo facilitator known as FortuNet 2000 may legally be used in the state. Specifically, you asked whether this machine satisfies the criteria for bingo games defined as "call bingo" pursuant to K.S.A. 1994 Supp. 79-4701(b). You further ask whether this machine falls within the definition of a "gambling device" pursuant to K.S.A. 1994 Supp. 21-4302. We will respond to each of these questions in turn.
The information you have provided indicates that Fortunet 2000 is essentially a computerized bingo card system. Bingo players utilizing a Fortunet terminal can play from 1 to 256 bingo cards per game. When the player marks on the screen the number called, each card being played by that player is likewise marked automatically. Players must be present at the physical location of the caller to play.
The Kansas Supreme Court recently discussed the characteristics common to "bingo games" as that term is used in the constitutional provision allowing the conduct of such games. Kan. Const., art. 15, sec. 3a. "All definitions include the requirement of a card or paper utilizing numerous numbers which are to be covered or marked if and when one of the numbers is drawn by lot and announced by a caller or selected through some other similar method." Stephan v. Parrish, No. 71,105 (Dec. 22, 1994). Likewise, the Kansas bingo act requires the use of a card and a similar method for playing the game. The pertinent portion of that act provides:
 "`Call Bingo'" means a game in which each participant must pay a charge and a prize or prizes are awarded to the winner or winners in which each participant receives one or more cards or in which a card or cards are included in a paper game program booklet each of which is marked off into 25 squares arranged in five horizontal rows of five squares each and five vertical rows of five squares each, with each square being designated by number, letter or combination of numbers and letters, and only the center square designated with the word "free," with no two cards being identical, with the players covering squares as the operator of such game announces a number, letter or combination of numbers and letters appearing on an object selected by chance, either manually or mechanically from a receptacle in which have been placed objects bearing numbers, letters or combinations of numbers and letters corresponding to the system used for designating the squares, with the winner of each game being the player or players first properly covering a predetermined and announced pattern of squares upon the card or a card which is included in a paper game program booklet being used by such player or players." K.S.A. 1994 Supp. 79-4701(b).
It is a fundamental rule of statutory construction that effect must be given to the purpose and intent of the legislature when that intent can be ascertained. Johnson v. McArthur,226 Kan. 128, 135 (1979). When a statute is plain and unambiguous, the language of the statute is determinative of legislative intent.Id. The plain language of K.S.A. 1994 Supp. 79-4701(b) defines "call bingo" as a game where each player "receives one or more cards." There is no statutory restriction on the form of the card. Although the provision goes on to specifically allow for cards which are included "in a paper game program booklet," there is no restriction on any other type of "card" which may be used in a traditional bingo game. So long as a "card" meets the other requirements of K.S.A. 1994 Supp. 79-4701(b) (e.g., marked off into 25 squares, five rows of horizontal squares, five rows of vertical squares, no two cards are identical, etc.), the form of the card is irrelevant. Accordingly, in our opinion, a bingo "card" may be displayed on a video screen.
In addition to the use of a "card," the statutory definition of "call bingo" defines the permissible method of playing the game. The definition requires in summary that an object be selected by chance, the number or letter on the object be announced by the operator of the game, and the winner of the game is the player who first covers a predetermined pattern of squares on the card. K.S.A. 1994 Supp. 79-4701(b). If a machine does not alter the method of play described above, its use would be consistent with the definition of "call bingo" in K.S.A. 1994 Supp. 79-4701(b). Thus, if a machine serves only as an electronic card on which a player covers the squares called by the operator of the game, the essential characteristics of the game of bingo are preserved and the use of these electronic cards would fall within the definition of "call bingo" in K.S.A. 1994 Supp. 79-4701(b), and within the scope of "games of bingo" authorized by the constitution.
The facts that we have been provided indicate that the FortuNet 2000 is merely a bingo player aid whereby the cards used by the players are displayed on a video screen. The operator of the game must still draw an object imprinted with a number or letter which is announced to the players. The players must use an electronic dauber to cover the space on the cards being played. Other than providing a more convenient way for players to keep track of the cards that they purchase and removing physical restraints so that more cards may be played by each person per game, it appears from the facts provided to us that the use of this machine in no way changes the essential characteristics of the bingo games legalized by K.S.A. 1994 Supp. 79-4701 and article 5, section 3a of the Kansas constitution.
You next inquire whether the above described machine falls within the definition of a "gambling device" pursuant to K.S.A. 1994 Supp. 21-4302. The 1994 Kansas legislature significantly changed the language of this provision. Under the definition set out in the 1994 amendment, there are two types of machines which are classified as gambling devices:
 "(A) Any so-called "slot-machine" or any other machine, mechanical device, electronic device or other contrivance an essential part of which is a drum or reel with insignia thereon . . ."
 "(B) any other machine, mechanical device, electronic device or other contrivance (including, but not limited to, roulette wheels and similar devices) which is equipped with or designed to accommodate the addition of a mechanism that enables accumulated credits to be removed, is equipped with or designed to accommodate a mechanism to record the number of credits removed or is otherwise designed, manufactured or altered primarily for use in connection with gambling, and (i) which when operated may deliver, as the result of chance, any money or property, or (ii) by the operation of which a person may become entitled to received, as the result of chance, any money or property; . . ." (Emphasis added.)
We have been informed that the device in question does not contain a "drum or reel with insignia thereon," and therefore, must meet the definition set forth in (B) in order to be classified as a "gambling device." We are also informed that the FortuNet 2000 is not a mechanism that is equipped with or designed to accommodate accumulated credits which may be removed, and that the machine may not deliver any money or property to the user. The question then becomes whether the FortuNet 2000 was designed primarily for usein connection with gambling and whether by the operation of the device, a person may become entitled to receive, as a result of chance, any money or property.
Based on the description of the device that has been provided to us, we do not believe that it is the operation of the device which entitles a player to receive money or property. Rather, it is the participation in a legitimate game of bingo which entitles the player to receive a prize. A player who correctly covers the appropriate pattern of squares would be entitled to receive the established prize regardless whether that player was using a paper card or an electronic one. In this way, FortuNet 2000 is simply an electronic version of the card used to play bingo, not a gambling device in and of itself. Further, because use of FortuNet 2000 in conjunction with a licensed bingo operation is permissible under the bingo act, it would not meet the definition of "gambling" set forth in K.S.A. 1994 Supp. 21-4303. [Bingo games managed, operated or conducted in accordance with the laws of the state by an organization licensed by the state to conduct bingo games are not included in the definition of "bet" in K.S.A. 1994 Supp. 21-4302(a)(4).] Therefore, it arguably is not designed primarily for use in connection with gambling.
As yet, there is no case law interpreting the recently enacted language of K.S.A. 1994 Supp. 21-4302. We must therefore look to the legislative history surrounding this enactment in order to determine legislative intent. We are guided by the principle that legislative intent should be determined in accordance with the general intent and purpose of the entire statute. Stephan v.Martin, 227 Kan. 456 (1980). The bill which included the addition of the language in question, 1994 House Bill No. 2560, was aimed at the problem of so-called "gray" machines. These machines consist primarily of video poker machines in which a player accumulates credits which may be removed from the machine. Unlike the FortuNet 2000, in the case of "gray" machines, it is the video game itself which results in the payoff to the player. Furthermore, FortuNet 2000 is designed to be used in playing bingo, a gambling form which has been legalized in specific situations in Kansas. Thus, excluding an electronic bingo aid from the definition of a "gambling device" in K.S.A. 1994 Supp.21-4302 would be consistent with the intent of the legislature to deter the illegal gambling that is connected with video poker games.
In conclusion, as presented to us, FortuNet 2000 is a facilitator which serves as an electronic card for use in legal bingo operations. As such, its use is consistent with the definition of "call bingo" in K.S.A. 1994 Supp. 79-4701(b). Furthermore, FortuNet 2000 does not meet the definition of "gambling device" as used in K.S.A. 1994 Supp. 21-4302.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Julene L. Miller Deputy Attorney General
CJS:JLM:jm