No. 83,288

IN THE MATTER OF THE APPEAL OF COLORADO INTERSTATE GAS COMPANY FROM A DECISION OF THE DIRECTOR OF PROPERTY VALUATION OF THE STATE OF KANSAS.

(14. P.3d 1099)

Opinion filed December 8, 2000.

*Richard D. Greene,* of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, argued the cause, and *Karen L. Pauley,* of Colorado Interstate Gas Company, of Colorado Springs, Colorado, was with him on the briefs for appellant.

*William E. Waters,* of Division of Property Valuation of the Kansas Department of Revenue, of Topeka, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: Colorado Interstate Gas (CIG), a public utility operating in Kansas as well as other states, appeals from a Kansas Board of Tax Appeals (BOTA) decision regarding the value of its Kansas property for the years 1993, 1994, and 1995. Among the numerous issues raised are the standard BOTA must use in its consideration of evidence presented at its hearing and the standard that must be applied in determining the value of the property. We reverse and remand for further proceedings before BOTA.

CIG identifies the following issues in this appeal: (1) procedural errors including (a) BOTA applied an incorrect standard of review, (b) BOTA failed to achieve its statutory mandate of three members in its final orders, and (c) one member of BOTA failed to recuse himself; (2) BOTA erroneously rejected fair market value as the standard to be applied for valuing the Kansas property of public utilities; (3) BOTA failed to exclude intangible property from its calculations as required by law; and (4) BOTA erroneously failed to adjust the valuation for the impact of an order by the Federal Energy Regulatory Commission (FERC) which increased competition. CIG also raises the following constitutional issues: (5) The 1992 amendment to Article 11, § 1 of the Kansas Constitution violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and (6) K.S.A. 79-5a01 violates both the Kansas and United States Constitutions by preferentially treating local gas gatherers and processors compared to interstate gas companies performing the same activities.

The resolution of Issue 1(a) involving BOTA's appropriate standard of review on appeal and Issue 2 involving fair market value as the standard for valuing the Kansas property of public utilities require that we reverse BOTA's decision and remand for further proceedings consistent with this opinion.

Because we reverse and remand for further proceedings before BOTA, we do not address other issues raised by CIG in its appeal. The questions regarding whether BOTA failed to achieve a statutorily mandated consensus in its decision, whether a member of BOTA erroneously failed to recuse himself, whether BOTA erroneously failed to exclude intangible property from its calculations, and whether BOTA erroneously failed to adjust the valuation to

take into account a FERC order are rendered moot by our decision. Moreover, the two constitutional questions raised by CIG are not ripe for determination by this court. We recognize that BOTA has no authority to rule on these constitutional issues. See *Zarda v. State*, 250 Kan. 364, 370, 826 P.2d 1365, *cert. denied* 504 U.S. 973 (1992). However, we have no way of knowing whether, after further proceedings before BOTA applying the correct standard of review, a case or controversy will remain. "It is the duty of the courts to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles which cannot affect the matters in issue before the court." *Miller v. Sloan, Listrom, Eisenbarth & Glassman*, 267 Kan. 245, 262, 978 P.2d 922

## FACTS

The record on appeal includes over 1,300 pages of transcript as well as five large volumes of exhibits in addition to 12 volumes of pleadings. The statement of facts submitted by the parties are inadequate for a proper understanding of the issues we must resolve. In order to understand the basis of the appeal and the relative positions of the parties, it is necessary to set forth the facts in much greater detail than is done by the parties.

CIG is a natural gas company which provides transportation, gathering, processing, storage, and production of natural gas. CIG operates in Montana, Wyoming, Utah, Oklahoma, Colorado, Texas, and Kansas. In Kansas, CIG operates its transmission line as well as approximately a thousand miles of gathering lines, a processing plant, and a major storage field.

CIG is defined as a public utility in Kansas for the purpose of taxation. K.S.A. 79-5a01(a)(4). CIG falls into what is classified as the large gas transmission group, a group comprised of eight companies in Kansas. In the valuation of the utilities, all members of the large transmission group are treated in the same manner.

CIG, as a natural gas company under the Natural Gas Act, 15 U.S.C. § 717 *et seq.* (1994), is regulated by FERC. FERC exercises preemptive jurisdiction over most of CIG's interstate gas activities with the exception of CIG's merchant, processing, and gathering

functions, which are essentially unregulated. FERC regulates the amount that CIG is allowed to charge for each unit of service in the regulated activities. The rate base allowed by FERC is the original costs of assets minus depreciation and minus deferred federal income taxes (DFIT). It is this base on which FERC allows the utility to earn income.

Effective October 1, 1993, FERC issued Order 636, which required that CIG "unbundle" several of its functional operations which provided for increased competition in those areas from other sources.

A key issue before BOTA and in this appeal involves the PVD's use of the unit method to determine the value of CIG's Kansas property. Under the unit method of valuing an interstate enterprise, the appraiser first finds the value of the company as a whole. The appraiser must then allocate a portion of that value to Kansas using an allocation factor determined by the appraiser which must have some relationship to the assets whose value is being allocated. The value which is allocated to Kansas is then apportioned among the different taxing jurisdictions.

For each of the subject years, the PVD valued the entirety of CIG's property using the income approach, cost approach, and market approach to value. In utilizing the income approach, the PVD forecasted CIG's net operating income for 1993 as $55,918,408; 1994 as $51,180,615; and1995 as $47,550,481. These projected net operating incomes were then capitalized using a rate of 11% for 1993 and 1994, and 11.5% for 1995. CIG's total value using the income approach was thus $508,349,164 in 1993; $465,278,318 for 1994; and $413,482,443 for 1995. These values were correlated with values determined for the same years using the cost and market approach, with resulting value for the company as a whole of $525,000,000 in 1993; $465,000,000 in 1994; and $430,000,000 in 1995.

The PVD then proceeded to apply an allocation factor to CIG's unit value in order to determine what part of that unit value should be allocated to Kansas. The allocation factor used by the PVD was based on original cost; that is, the relationship between the original cost of CIG's property in Kansas and the original cost of CIG's

total property in all the states in which CIG operates. This factor was .099648 in 1993, .103315 in 1994, and .103604 in 1995. This resulted in a unit value allocated to Kansas of $50,820,480 in 1993; $48,041,475 in 1994; and $44,549,720 in 1995.

CIG disagreed with the PVD regarding both the total value of the company and the portion allocated to Kansas, and appealed to BOTA. BOTA conducted a hearing on the matter from January 21 to 29, 1997. The following summary of testimony presented to BOTA is set forth in relation to the issues resolving this appeal.

## VALUATION AND ALLOCATION PROCESS

### A. Robert Badenoch—Kansas Department of Revenue Bureau Chief

Robert Badenoch, Kansas Department of Revenue Bureau Chief for state-appraised property, testified during the hearings on behalf of both parties. He testified that it is his job to apply the tax laws and correlate the value of companies for Kansas taxation purposes. According to Badenoch, the allocation (that is, the process of determining the value of CIG's properties in Kansas) is not intended to achieve fair market value of the property in Kansas. Rather, he characterized allocation as an "arbitrary" method to assign a uniform portion of the property to be valued in Kansas, with the goal being to achieve a market value of the company as a whole and to transfer part of that value to Kansas. In Badenoch's opinion, Kansas' requirement to use fair market value ceases at the unit level and once the fair market value of the unit as a whole is found, the portion allocated to Kansas does not have to represent the fair market value of the property in Kansas. Badenoch admitted that the allocation process "could well" import value from other states into Kansas.

Badenoch testified that Kansas uses original cost as its allocation factor and has done so since 1969. He stated that he did not know why Kansas chose original cost but speculated that it was because K.S.A. 79-5a25, which dealt with apportionment among counties, specified that original cost was to be used to perform that function.

Badenoch admitted that if fair market value at the state level is the goal, using original cost would not be the best approach be-

cause it does not take into account the age of the property, depreciation, appreciation, or income earning ability. He admitted that a net book allocation factor (that is, a factor which used original cost minus depreciation) would probably come closer to fair market value. However, he did not think it would be administratively feasible to use net book because it would require taxpayers to supply substantially increased information. Badenoch further admitted that if the goal is to achieve fair market value of property at the state level, an income-based allocation factor would be better as the entire company is valued with an emphasis on the income method. He also testified that if achieving the fair market value at the state level is a goal, then the entire unit valuation system is impractical. However, he testified that it is the only generally accepted methodology to determine the market value of public utilities.

Exhibit PV 44a, a survey conducted by Badenoch's office of other states with regard to what allocation factors they used, provides the following information. Of the 28 states surveyed, seven states (Alabama, Arizona, Kansas, Louisiana, Mississippi, New Hampshire, and Wisconsin) use original cost as the sole allocation factor for valuing gas pipelines. One state (Montana) values two gas companies on original cost and one using a factor based 50% on depreciated cost and 50% on miles of pipeline. Ten states (Arkansas, Georgia, Iowa, Minnesota, Nebraska, Oklahoma, South Carolina, Tennessee, Virginia, and West Virginia) consider original cost along with other methods such as depreciated cost (net book), gross revenue, net revenue, miles of pipeline, and pipeline capacity in determining their allocation factor. Seven states (Colorado, Idaho, Maryland, North Carolina, Utah, Washington, and Wyoming) use net book as the sole allocation factor. One state (Oregon) considers net book in conjunction with net revenue in determining an allocation factor. One state (Kentucky) uses gross revenue in conjunction with net revenue, while one state (Missouri) considers gross revenue, net revenue, and pipeline miles in arriving at an allocation factor.

*B. Richard G. Smead—CIG Senior Vice-President of Regulatory Affairs*

Richard G. Smead, Senior Vice-President of Regulatory Affairs for CIG, testified regarding the valuation process. He stated that the benchmark for the value of a highly regulated public utility's property should be the property's rate base value because it is strongly related to the earnings capability of the property. Responding to charges that rate base was not a particularly good indicator of value because it allowed some property which was still in use to be depreciated to zero, Smead noted that the depreciation rates for the property are determined by FERC rather than by the individual company. In his opinion, rate base would be a particularly good allocation factor as there is a strong relationship between rate base and the value of the company.

### C. Dan Homec—CIG Assistant Vice-President and Controller

Dan Homec, Assistant Vice-President and Controller of CIG, also testified with regard to the use of rate base as an allocation factor. According to Homec, original cost is not a good allocation factor to use for CIG's properties in Kansas because the majority of CIG's facilities in Kansas are older than those in other states in which CIG operates. Homec testified that rate base, which would reflect the depreciation and lesser value of those facilities, would be a better allocator. Homec further testified that the other states in which CIG operates all use net book which also reflects depreciation as an allocation factor.

### D. Kenneth Williams—Consultant for CIG

Kenneth Williams, a pipeline consultant, testified with regard to valuation and allocation. On the argument that rate base and net book should not be used because they allow an asset to be depreciated to zero, even though that asset is still a part of the system and still contributing, Williams stated that it would not be to the advantage of a pipeline company to fully depreciate an asset because the company could then not earn a rate based on that asset. He testified that rate base would be a good allocation factor because it is tied closely to the value of the company in that net depreciated original cost would be what a willing buyer or seller would pay for the company. There is not, however, the same con-

nection between gross original cost and the value of the company; therefore, original cost would not make a good allocation factor.

### E. John H. Davis III—Expert Appraiser for CIG

Appraiser John H. Davis III, a specialist in the field of public utility valuation, testified on behalf of CIG with regard to the valuation and allocation process. Davis testified that CIG asked him to come up with a system value and an allocation factor which would fairly allocate the system value to Kansas in a manner that would show the fair market value of the property in Kansas. Davis testified that in the valuation process, the traditional method of valuing the system is through the income approach, although an appraiser should also consider the cost approach and direct sales approach and reconcile and weigh the values.

With regard to the use of an allocation factor, Davis stated that an allocation factor should be used that will best result in the proper fair market value of the properties in the state. He testified that achieving fair market value through the use of the unit method is not impossible but, instead, fairly simple as long as there is a connection between the allocation factor and the method used in valuing the business as a whole. He opined that rate base should be used as an allocation factor because rate base is used to find net income which is then used to value the business in the income method. In the alternative, according to Davis, net book could also be used as an allocation factor and would still supply a link to fair market value. Davis testified that no one uses original cost to develop a system value and, therefore, original cost should not be used as an allocation factor because there is no link between original cost and the value of the property. Davis stated that it was impossible to achieve fair market value with an original cost allocation factor because it fails to take into account the age and condition of the plant and equipment.

Davis calculated allocation factors for the years in question using rate base as an allocator. He came up with an allocation factor of 5.11% in 1993, 4.78% for 1994, and 4.85% for 1995 (compared to the PVD's allocation factors of approximately 9.9%, 10.3%, and 10.3%). Davis also used a summation approach which is used in

some other states and does not use a unit method. In this approach, Davis valued CIG's actual property in Kansas using its net book value and also valued the property using its rate base value. These summation values compared favorably with the result obtained under the unit method using rate base as an allocation factor. Davis testified that the PVD's values using original cost as an allocation factor were grossly out of line with the other indicators of value.

Davis also testified that the other states in which CIG operated use mostly net book as an allocation factor which takes into account depreciation and, therefore, Kansas' use of original cost will cause Kansas properties to be overvalued. Addressing concerns that rate base would not be a good allocation factor because it allows some assets to be depreciated to zero, Davis testified that FERC controls depreciation rates and would act to prevent a certain asset group from being depreciated to zero.

Under cross-examination, Davis admitted that rate base is not a generally accepted appraisal method of allocating unit value. According to Davis, this is because most companies do not keep the records needed to determine such a factor. However, Davis testified that the next best allocation method would be to use net book as an allocation factor which is a generally accepted appraisal method.

### F. John Hughes II—Tax Examiner for the PVD

John Hughes II, tax examiner for the PVD, testified regarding the valuation process and allocation factors. Hughes testified that he attempts, through the valuation process, to achieve a fair market value of the companies as a whole rather than the fair market value of their property in Kansas. He admitted that the use of an allocation factor which is unrelated to value could result in a unit value allocated to Kansas which is not related to the value of the property in Kansas.

Hughes testified that neither the cost approach nor the stock and debt approach to value are particularly suited to valuing an income producing property and that the income approach is the preferred method. Hughes stated that to get the best fit, he would prefer to use an income component that would work as an allo-

cation factor. However, rate base, in Hughes' opinion, would not work as an allocation factor because the depreciation in the rate base of equipment is spread throughout the system rather than applied to individual assets. He further testified that net book is not a good allocation factor because it allows for depreciation and does not bear a relationship to what the property is earning. Further, according to Hughes, net book would give the taxpayer a double benefit because the original cost starting point would be lower for an older asset, and then depreciation would lower the value even more.

### G. Floyd Rumsey—Appraiser for the PVD

Floyd Rumsey, an appraiser for the PVD, testified regarding the valuation process. Rumsey stated that in using the unit method, the PVD is trying to determine, as fairly as possible, what proportion of the entire system's value exists within Kansas. The PVD is not trying to achieve the fair market value of the operating property in Kansas.

Rumsey testified that in his opinion, rate base is not a generally accepted allocation factor and net book would not be a good allocation factor because it would not reflect the contribution of the assets to the production of income. Rumsey also testified that net book would be burdensome on the companies that might not keep as detailed depreciation information as CIG. Rumsey was of the opinion that net book does not necessarily equate to income and original cost was just as valid an allocation factor.

### H. Dr. A. James Ifflander—Valuation Consultant for the PVD

Dr. A. James Ifflander, a valuation consultant retained by the PVD, admitted that states should use an allocation process methodology that provides the best judgment of fair market value in the state.

### I. Michael W. Goodwin—Appraiser for the PVD

Michael W. Goodwin, an expert appraiser, testified on behalf of the PVD. Goodwin stated that it is not the task in unitary valuation to arrive at fair market value of specific assets within a geographical area but rather to apportion a reasonable amount of the unitary

value to the area. Goodwin admitted that it would be preferable to use multiple allocation factors to do so in that more allocation factors would offset deficiencies in the others. He testified that there is no universally applicable allocation factor. Rather, the bottom line is that the results should make sense.

Goodwin opined that original cost is a usable factor because it reflects the amount of investment made throughout the system and the Kansas allocation method based on original cost is reasonable. He testified that the Kansas allocation, if used by all states, would fully apportion CIG's value. According to Goodwin, some states use original cost exclusively and others use it with other factors as a basis for allocation of value. The PVD has in the past and continues to use original cost for all pipelines. Moreover, original cost is used by FERC to allocate expenses. He testified that there are other allocation factors which would give Kansas a higher percentage of value.

However, under cross-examination, he admitted that original cost is not a reliable indicator of value for a large gas transmission taxpayer and noted that most states that use original cost as an allocation factor blend it with other factors.

BOTA DECISION

Two of the five members of BOTA recused themselves for this hearing. BOTA's final decision consisted of a majority opinion by two members and a concurring opinion by another member. The majority determined that BOTA's review was de novo but also found that it was required to defer to the judgment of the PVD unless the standards prescribed by K.S.A. 79-5a04 had been "intentionally and grossly disregarded." Using this standard, the BOTA majority found that the capitalization rate used by the PVD was appropriate. The BOTA majority further found that CIG had not shown that the PVD incorrectly taxed exempt intangible property. The BOTA majority also determined that the PVD's use of original cost was reasonable and further held that the allocation in Kansas did not have to be representative of the fair market value of CIG's property in Kansas. According to the BOTA majority, this would require abandonment of the unit value methodology. The

BOTA majority found no evidence that the allocation factor used imported value to Kansas grossly out of proportion to CIG's presence in the state. Accordingly, the BOTA majority affirmed the allocation factors used by the PVD.

The concurring opinion disagreed with the BOTA majority's determination that allocation in Kansas did not have to be representative of fair market value in Kansas. The concurring opinion would hold that fair market value must be the benchmark and that if the allocation factor used or the unit valuation system did not reasonably relate to fair market value, different factors and methods must be used under the statute. However, the concurring opinion concluded that the results reached by the majority were correct and that the appellate courts would be able to sort out the requirements and reach a just result.

CIG filed a motion for reconsideration which was granted. On reconsideration, the three members of BOTA modified their opinion, acknowledging that the allocation must have a rational relationship on its face and in its application to the property of the taxpayer in the state. BOTA affirmed its original order.

CIG appealed directly to the Court of Appeals pursuant to K.S.A. 74-2426(c)(3) (granting the Court of Appeals jurisdiction over action for review of property appraised and assessed by the PVD). The matter was then transferred to this court on its own motion pursuant to K.S.A. 20-3018(c).

## APPELLATE COURT STANDARD OF REVIEW

This is an appeal from an order of BOTA and this court's scope of review is dictated by K.S.A. 77-621. See K.S.A. 74-2426(a) (stating that actions by BOTA are subject to review in accordance with the act for judicial review and civil enforcement of agency actions). Under K.S.A. 77-621(c), this court may grant relief if it determines:

"(1) The agency action, or the statute or rule and regulation on which the agency action is based, is unconstitutional on its face or applied;

"(2) the agency has acted beyond the jurisdiction conferred by any provision of law;

"(3) the agency has not decided an issue requiring resolution;

"(4) the agency has erroneously interpreted or applied the law;

"(5) the agency has engaged in an unlawful procedure or has failed to follow prescribed procedure;

"(6) the persons taking the agency action were improperly constituted as a decision-making body or subject to disqualification;

"(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act; or

"(8) the agency action is otherwise unreasonable, arbitrary or capricious."

We have stated that "BOTA is a specialized agency that exists to decide taxation issues, and its decision should be given great weight and deference when it is acting in its area of expertise. However, if we find that BOTA's interpretation is erroneous as a matter of law, we will take corrective steps." *In re Tax Appeal of Univ. of Kan. School of Medicine*, 266 Kan. 737, 749, 973 P.2d 176 (1999).

ISSUES

*(1) BOTA's Standard of Review*

CIG's first contention is that BOTA improperly determined that it must give deference to the PVD valuation and that its standard of review was to determine whether the PVD intentionally and grossly disregarded the standards prescribed by K.S.A. 79-5a04. CIG argues that BOTA has a statutory responsibility to make an independent judgment regarding the value of CIG's property.

With regard to its scope of review, BOTA stated:

"While the Board has the authority to exercise its judgment anew and independent of the Director, deference is to be provided to the Director and PVD as the administrative agency charged with the responsibility of enforcing the public utility valuation and assessment statutes. Therefore, in determining the validity of an assessment of state assessed public utility property, the essential question is whether the standards prescribed by K.S.A. 79-5a04 have been considered and applied by taxing officials, or intentionally and grossly disregarded. *Northern Natural Gas Co. v. Dwyer*, 208 Kan. 337, 355-56, 492 P.2d 147 (1971) (citing *Garvey Grain, Inc. v. MacDonald*, 203 Kan. 1, 453 P.2d 59 [1969])."

BOTA then concluded that in order to prevail, CIG had the burden of proof to show that the PVD intentionally and grossly disregarded the standards prescribed by K.S.A. 79-5a04 in arriving at the fair

market value of CIG's property and allocating fair market value to Kansas.

*Northern Natural Gas Co. v. Dwyer*, 208 Kan. 337, 492 P.2d 147 (1971), *cert. denied* 406 U.S. 967 (1972), relied on by BOTA, involved a similar question concerning the standard to be used by BOTA in reviewing decisions of the PVD. At issue was an appeal by the public utility from an order of the district court upholding the Kansas Board of Tax Appeals' order as to the 1969 value of the utility's property in Kansas. This court recognized that the essential question it faced in reviewing the validity of an assessment of real estate, which by statute used the same process as that used to determine the value of the public utility personal property, was whether the standards prescribed by 79-503 (repealed in 1982) had been considered and applied by the taxing authorities or intentionally and grossly disregarded. 208 Kan. at 355-56.

However, in *Northern Natural Gas* Co., we left no doubt about the responsibilities of BOTA in its determination of value on appeal, stating:

"The Director [of Property Valuation] exercises independent judgment in approving the valuation of property by personnel in his department, and the Board [of Tax Appeals] exercises its judgment *anew and independent of the Director in approving the valuation and assessment of property.* Whether the Board determines the matter of property valuation before it as an appeal board or as a board of equalization, it functions independently of the Director in matters of administrative judgment and decision. It is the order of the Board which is here for review." (Emphasis added.) 208 Kan. at 365.

*Garvey Grain*, which was also relied on by BOTA as authority for giving deference to the PVD's valuation, noted that the main reason for this standard was to insure that courts do not substitute their judgment for that of an administrative agency where the assessment was done in accordance with the law. 203 Kan. at 13. This standard has no application, however, with regard to BOTA's own review of the PVD's valuation.

Rather, K.S.A. 1996 Supp. 74-2438 requires that BOTA exercise its judgment anew and independent of the PVD. It provides that the hearing before BOTA "be a de novo hearing unless the parties agree to submit the case on the record made before the director

[now; secretary of revenue]." The very definition of a de novo hearing is "[a] reviewing court's decision of a matter anew, giving no deference to a lower court's findings." Black's Law Dictionary 725 (7th ed. 1999). See also *Reeves v. Equipment Service Industries, Inc.*, 245 Kan. 165, 169-171, 777 P.2d 765 (1989) (characterizing a trial de novo as one in which the administrative agency makes an independent adjudication of the facts and the law).

Any doubts about the responsibilities of BOTA regarding its determination of value in cases such as the one we now consider were resolved by this court in *Mobil Pipeline Co. v. Rohmiller*, 214 Kan. 905, 522 P. 2d 923 (1974). *Mobil* involved an appeal by the PVD in an ad valorem tax case from a judgment of the District Court of Lyon County, Kansas. The district court had reversed orders of the Board of Tax Appeals determining the state-wide 1970 ad valorem assessment of Mobil Pipeline Company's tangible property in Kansas.

Much as the PVD in the present case, Mobil Pipeline argued that BOTA's authority was limited in scope where an appeal is taken pursuant to K.S.A. 74-2426. Specifically, Mobil Pipeline argued that BOTA, as the highest administrative tribunal for ad valorem tax controversies, should not make an assessment of property, but rather simply review the PVD's decision to see whether it met the constitutional, statutory and judicial valuation requirements. In support of its argument, Mobil Pipeline noted that the article on property valuation (K.S.A. 79-1401 *et seq.*) confers broad powers and duties on the PVD with regard to the "appraisement and assessment" of gas pipe lines and property and that no corresponding "appraisement or assessment" powers or duties were legislatively conferred upon BOTA. Thus, according to Mobil Pipeline, BOTA's scope of review should be limited.

BOTA apparently accepted a similar argument in the case at hand. BOTA, while recognizing that it had de novo review, found that deference should be given to the PVD as the administrative agency charged with the responsibility of enforcing the validity of the assessment.

However, in *Mobil*, this court rejected such an argument regarding a limited scope of review, concluding:

"[W]e think a clear legislative intent is indicated where an appeal is taken to the State Board of Tax Appeals from an order of the Director of Property Valuation on the assessment of state assessed property. The Board has the power and authority to exercise its judgment anew and independent of the Director in determining the assessment of state assessed property. The Board is required to make written findings of fact forming the bases of its determination and final order, and the Board's findings must be made a part of such final order. (74-2426, *supra*.) The judgment of the Board *supersedes* the judgment of the Director as to the assessed valuation of state assessed property. Therefore, it is the judgment of the Board which is subjected to the limited review of an administrative decision in an ad valorem tax case, where appeal is taken to the district court from an order of the Board." 214 Kan. at 920.

We went on to further emphasize the independent responsibility of BOTA in its determination of value, a responsibility that is foreign to the concept of deference, especially deference to a party to the litigation:

"While the Director in the case at bar testified before the Board that he considered all of the indicators of value prescribed by the legislature in 79-5a04, *supra*, it was not the function of the district court on appeal from the orders of the Board to ascertain whether the Director had done so, but whether the Board, after hearing all of the evidence and making findings of fact, had entered orders which were unreasonable, arbitrary, or capricious.

"Each of the orders of the Board, which are the subject of appeal in this action, indicate that the Board determined the assessment of Mobil's property independently of the determination made by the Director. This is disclosed by the findings of the Board in each of its orders. The Board states in its finding concerning the crude pipeline: 'That based on the evidence presented the correct assessed valuation of the appellant's properties within Kansas is $1,797,650.00, the same as was determined by the Kansas Director of Property Valuation.' The Board's finding concerning the products pipeline is substantially the same as the one above, except the valuation is $4,150,985.00." 214 Kan. at 927.

The law in Kansas is clear. It is the duty of BOTA, in reviewing a valuation by the PVD, to exercise its judgment anew based on the evidence presented to it at the hearing and without giving deference to the PVD's valuation. K.S.A. 1996 Supp. 74-2438.

The PVD argues BOTA did exercise its judgment anew. The PVD bases this assertion on the length of the hearing and the fact that BOTA made many findings of fact and law. However, BOTA ultimately held CIG to the standard of showing that the PVD had intentionally and grossly disregarded the standards in order to pre-

vail. BOTA's adherence to this standard is demonstrated by its conclusion wherein it found that the PVD had not " 'intentionally and grossly disregarded' the standards prescribed by K.S.A. 79-5a04" and that its valuation should therefore be upheld. This standard was erroneous, and the matter must be remanded to BOTA for consideration of all evidence under the correct standard without deference to the PVD's findings.

*(2) The standard to be applied for valuing the Kansas property of public utilities*

CIG contends that BOTA erroneously rejected fair market value as the standard to be applied for valuing the Kansas property of public utilities. In its majority opinion, BOTA found that the allocation of CIG's unit value to Kansas did not have to be representative of the fair market value of CIG's property in Kansas. BOTA's majority reasoned that requiring fair market value would require the abandonment of the unit value methodology and that abandonment of the unit value methodology would be contrary to K.S.A. 79-5a04. Thus, according to the majority, the allocation need only reasonably assess CIG's property in proportion to CIG's presence in the state. On reconsideration, BOTA modified this slightly to require that the allocation have a "rational relationship" to the property of CIG in Kansas. In essence, BOTA's decision is that the unit value of CIG's operations in all states must be appraised at fair market value and that the allocation of that fair market value to Kansas must have a rational relationship to the property of CIG in Kansas, but that the allocation need not result in a value apportioned to Kansas that is representative of the fair market value of the property in Kansas because such a result cannot be achieved through the unit valuation process.

K.S.A. 79-5a04 sets forth the rules for the valuation of real and personal property of public utilities:

"The director of property valuation shall annually determine the fair market value of public utility property, both real and personal, tangible and intangible, of every public utility as defined in subsection (a) of K.S.A. 79-5a01 and amendments thereto."

The statute further provides:

"The division of property valuation in determining the fair market value of public utility property shall, where practicable, determine the unit valuation, allocated to Kansas, and in doing so shall use generally accepted appraisal procedures developed through the appraisal process and may consider, including but not by way of exclusion, the following factors:

"(a) Original cost.

"(b) Original cost less depreciation or reproduction cost less depreciation, or both, or replacement cost new less depreciation, except that where either method is used proper allowance and deduction shall be made for functional or economic obsolescence and for operation of nonprofitable facilities which necessitate regulatory body approval to eliminate.

"(c) The market or actual value of all outstanding capital stock and debt.

"(d) The utility operating income, capitalized in the manner and at such rate or rates as shall be just and reasonable.

"(e) Such other information or evidence as to value as may be obtained that will enable the property valuation department to determine the fair market value of the property of such public utility."

A plain reading of the statute supports the following conclusions: (1) The PVD shall annually determine the fair market value of the public utility property; (2) if practicable, the fair market value of public utility property is determined by using the unit valuation method and then allocating that value to Kansas; and (3) in so doing, the PVD may use a variety of methods with the ultimate goal being a determination of the fair market value of the public utility's property in Kansas, considering the property as part of a going concern.

BOTA's interpretation of the above statute is contrary to the statute's plain language. BOTA begins with the premise that it must use the unit valuation process and that because it must do so, the ultimate goal cannot be to find the fair market value of the property in Kansas. However, this premise is faulty because K.S.A. 79-5a04 does not in fact require the use of the unit valuation process but instead requires that unit valuation be used "if practicable" to find fair market value. K.S.A. 79-5a04 requires the fair market value be the goal and that this be achieved, if possible, through the use of unit valuation. If unit valuation will not result in the valuing of the property in Kansas at fair market value, other methods must be used to determine the fair market value of the utility's property in Kansas.

We recognize that the unit valuation system does not necessarily result in the valuation of each particular piece of personal property at its fair market value. In the case of *In re Tax Appeal of Western Resources, Inc.*, 22 Kan. App. 2d 593, 599, 919 P.2d 1048 *rev. denied* 260 Kan. 993 (1996), the Court of Appeals noted:

"In its purest sense, the unit system taxes only the total value of a business as a going concern. It does not tax, nor does it necessarily include, the fair market value of all of the component parts."

This does not mean that the unit valuation process is invalid in Kansas. It is the favored method of valuation for property owned by a public utility in Kansas. However, if in allocating value to Kansas property, the resulting value does not represent the fair market value of the utility's property in Kansas, other methods provided for by K.S.A. 79-5a04 must be used to determine the fair market value the utility's Kansas property.

Based upon the expert testimony presented by the PVD before BOTA that the unit valuation method used need not represent the fair market value of CIG's property in Kansas, and considering that BOTA applied an incorrect standard of review for that evidence by giving deference to the PVD's determination of value, there is a real possibility that BOTA's final determination of value for the years in question was not based on fair market value as required by K.S.A. 79-5a04.

Reversed and remanded for further proceedings.

ABBOTT, J., not participating.

BARRY A. BENNINGTON, District Judge, assigned. ∎