No. 87,313

IN THE INTEREST OF M.R., D.O.B.: 11-14-86

(38 P.3d 694)

Opinion filed January 25, 2002.

*Craig A. Stancliffe*, of Lawrence, argued the cause and was on the briefs for appellant.

*Angela M. Wilson*, assistant district attorney, argued the cause, and *Christine E. Kenney*, district attorney, and *Carla J. Stovall*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

ABBOTT, J.: M.R., a 14-year-old juvenile, was found to be a child in need of care and placed in a group home. She refused to attend school or to perform court-ordered community service in lieu of school attendance. The district judge initiated indirect contempt proceedings and ultimately found M.R. to be in indirect contempt, placing her in a juvenile detention center during the day and confining her to the group home otherwise. At the contempt hearing,

M.R. moved to dismiss the proceedings, arguing that the court lacked jurisdiction to find her in contempt. M.R. now appeals the court's denial of her motion to dismiss.

M.R., her half brother, and her half sister came to Kansas from California. They had been in California foster care because of neglect and abuse by M.R.'s mother. M.R.'s stepfather was awarded legal guardianship of the children by the State of California. M.R. lived with her stepfather beginning in March 2000. The State of California closed its case file on November 21, 2000.

On January 17, 2001, Kansas Department of Social and Rehabilitation Services (SRS) worker Elizabeth Day filed an application for care and/or protective custody order concerning M.R. with the juvenile division of the District Court of Douglas County, Kansas. The specific facts alleged concerning M.R were:

"[M.R.] has been truant for much of the school year and is highly disruptive in school. School records indicate that [M.R.] has six (6) in-school suspensions; seven (7) out of school suspensions; three (3) unexcused absences and four (4) excused absences. She skipped school on January 2, 2001 and did not come home at the end of the school day. [Her stepfather] called her in as a runaway. She came into Police Protective Custody that same day and was placed at The Shelter. She was also referred to the Truancy Program because of this incident.

"A referral to Family Preservation services was made by SRS on January 5, 2001. [M.R.] returned home that day. She agreed to attend school and refrain from running. She skipped school on January 9, 2001. She ran from [her stepfather's] house the next day, January 10, 2001. Early in the morning of January 13, 2001, [her stepfather] received an anonymous phone call telling him [M.R.] could be located at 3rd and California. He drove there and returned with [M.R.] to their home. [M.R.] was in the company of two other female juveniles and an adult male . . . . [She was] described . . . as, 'drunk, soiled and with "hickies" all over her.' After returning to their home, [M.R.] described to her mother over the phone, sexual encounters with the adult male she was with at 3rd and California. [The adult male] has been arrested . . . .

"[t]he police [were called] after . . . the phone conversation between [M.R.] and her mother. [M.R.] was again placed in Police Protective Custody and placed at The Shelter.

"[M.R.] ran from The Shelter at approximately 2:05 p.m. on January 16, 2001. [She was] found . . . and [taken] to the Lawrence Police Station. She was placed in detention because of the extreme run risk. [Her stepfather] is unwilling for [M.R.] to return to his home at this point. Connie is not an option for placement because of her confirmed abuse of [M.R.] in California."

On January 22, 2001, M.R. was adjudicated a child in need of care by the Honorable Jean F. Shepherd. Pursuant to K.S.A. 38-1543(g), M.R. was placed in temporary custody of Lawrence SRS, with placement at Kaw Valley Center. The court found that out-of-home placement would be in her best interest because her "running [away] and other behaviors make it impossible for [her] stepfather to maintain her safely at home; she engages in high-risk behavior when she runs." The case plan included a provision for eventual reintegration into her stepfather's home.

The court ordered that M.R. live at The Shelter, Inc. because she required "much more structure and supervision for her own safety than can be provided in family home, even with services." In addition, the court ordered that M.R. attend summer school or perform 2 hours of community service work for each hour of school she missed.

Within days of the hearing, on May 4, 2001, Gina Meier-Hummel, a licensed social worker with SRS, wrote to the Douglas County District Court to inform the court that M.R. refused to perform community service as ordered. Elizabeth Fleske, a family support worker with Kaw Valley Center, filed an affidavit with the Douglas County District Court stating, in pertinent part:

"THAT [M.R.] was brought into the custody of Lawrence SRS and placed with Kaw Valley Center on January 17, 2001 in the above captioned case.

"THAT [M.R.] was originally placed in Hiawatha, Kansas on January 17, 2001, where she ran from her placement. Upon her return to Lawrence, Kansas on March 12, 2001, [M.R.] was placed at The Shelter, Inc. in Lawrence, Kansas. [M.R.] was subsequently enrolled in Central Junior High School as a seventh grader.

"THAT [M.R.] began refusing to attend school, stating that she believes that there are persons at Central Junior High School who wish to do her harm. The Shelter, Inc. has attempted to have [M.R.] transferred to West Junior High School, but it has not yet been approved.

"That [at] [M.R.]'s Formal Hearing on April 30, 2001, the court ordered [M.R.] to perform two (2) hours of community service work (CSW) for each hour of school that [M.R.] missed. That [M.R.] has continuously refused to attend school. That [M.R.] has continuously refused to participate in any CSW and, as of this date, she has yet to complete a single hour of CSW."

On May 17, 2001, Judge Shepherd appointed advocate counsel to represent M.R. personally and filed an order to show cause why

[M.R.] should not be held in indirect contempt of the court's orders.

At the contempt hearing, counsel for M.R. moved for dismissal of the contempt proceedings, arguing that the court lacked jurisdiction to find the child in contempt. M.R. admitted the allegations in the affidavit, and the court found her in indirect contempt for failure to comply with the court's orders. Judge Shepherd requested recommendations from counsel as to what would constitute an appropriate way for M.R. to purge herself of the contempt. After listening to recommendations, the court stated:

"At this time it will be the order of the Court that to purge herself of contempt [M.R.] be placed on house arrest to continue in her placement at The Shelter, and she is to attend the Day Detention School for summer school.

"If she is successful in the summer school program at the Day Detention School, then the Court recommends that she attend West Junior High School in the fall. But she needs to demonstrate that she can successfully participate in the school program.

"I will waive the community service work that has accumulated to date . . . because that would be an additional consequence to her."

Judge Shepherd stated that she was entering the sentence pursuant to the court's contempt authority in Chapter 20 of the Kansas statutes.

M.R. attended the Day Detention School from May 24, 2001, through July 13, 2001. July 13, 2001, was M.R.'s last day at the Day Detention School. A letter received by the court on July 13 from Meier-Hummel advised that

"[M.R.]'s 90th day at the Shelter is 7/15/01. On 7/15/01 she will then go to the Lingenfelser, 1926 Tennessee here in Lawrence for a temporary placement until she moves to a more permanent placement on 7/17/01 at the Bell residence. Ms. Bell lives at 3147 Douglas Road, Richmond, KS 66080."

On July 19, 2001, M.R. was transferred from her foster home to the KVC West Shelter in Kansas City, Kansas, because of disruptive behavior.

The first issue for consideration is whether this case is moot. The State contends that because M.R. is no longer required to attend the Day Detention School, she has purged herself of the contempt and the case is moot.

Conversely, M.R. argues that the issues presented are not moot because there has been no order terminating her sentence. Furthermore, M.R.'s attorney asserts that she did not purge her contempt by attending summer school as ordered because she was removed from Day Detention School on July 13, while her summer school was scheduled to last until August 10, 2001. This argument seems disingenuous because M.R. was removed from the house and school because the time contracted for had expired.

" 'It is the duty of the courts to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles which cannot affect the matters in issue before the court.' " *In re Appeal of Colorado Interstate Gas Co.*, 270 Kan. 303, 305, 14 P.3d 1099 (2000), citing *Miller v. Sloan, Listrom, Eisenbarth & Glassman*, 267 Kan. 245, 262, 978 P.2d 922 (1999).

" ' "An appeal will not be dismissed as moot unless it clearly and convincingly appears the actual controversy has ceased and the only judgment which could be entered would be ineffectual for any purpose and an idle act insofar as rights involved in the action are concerned." [Citations omitted.]' " *Shanks v. Nelson*, 258 Kan. 688, 690-91, 907 P.2d 882 (1995).

On July 15, 2001, because The Shelter, Inc. had reached the maximum number of days under its contract to provide services for Kaw Valley Center, M.R.'s residency changed. M.R. was moved to a foster home, ran from it a few days later, then was summarily placed at Kaw Valley West campus. She remains there and attends West Middle School in Kansas City, Kansas.

Under K.S.A. 38-1503a(c), "[w]hen jurisdiction has been acquired by the court over the person of a child in need of care it may continue until the child: (1) Has attained the age of 21 years; (2) has been adopted; or (3) has been discharged by the court." Therefore, because none of the listed conditions have been met, M.R. remains subject to the district court's jurisdiction. Although M.R. is no longer subject to the court's order regarding house arrest and Day Detention School, the district court has never specifically stated that M.R. has purged her contempt.

Looking carefully at the language used by the district court, we note that there was no specific time period stated to purge the

contempt. The district court only required that she "be placed on house arrest to continue in her placement at The Shelter," and that she "attend the Day Detention School for summer school." The district court has taken no further action in regard to M.R.'s indirect contempt, giving rise to the inference that the district court considers the contempt purged. M.R. was released from house arrest and no longer must attend Day Detention School.

As will be seen later in the opinion, M.R. was found to be in civil and direct contempt. Based on the record before us, we cannot tell what M.R.'s present status is. We therefore remand the case to the trial court for a hearing to determine whether the issue is moot by reason of M.R. having purged herself of contempt or her contempt no longer being an issue and for the court to draw an appropriate order.

We have no difficulty in concluding the district court had the power to impose sanctions against a juvenile for indirect contempt. M.R. contends that there is no controlling precedent in either statute or case law giving the court the power to find a child in indirect criminal contempt and sentencing that child to physical detention in order to purge the alleged contempt.

M.R.'s arguments can be classified as a challenge to the district court's judicial authority. Art. 2, § 1 of the Kansas Constitution provides that "judicial power is the power to interpret and apply the law to actual controversy." *State ex rel. Tomasic v. Unified Gov. of Wyandotte Co./Kansas City*, 264 Kan. 293, 301, 955 P.2d 1136 (1998). "Courts in Kansas are vested with judicial power, which is the 'power to hear, consider and determine controversies between rival litigants.' [Citations omitted.]" 264 Kan. at 337.

In *State v. Jenkins*, 263 Kan. 351, 950 P.2d 1338 (1997), this court discussed the basis of a district court's power to impose sanctions for contempt of court. There, this court considered the inherent power to punish for contempt of court as an alternative to the statutory authority of a court to initiate contempt proceedings granted in K.S.A. 20-1201 *et seq.*, and stated:

"The power to punish for contempt of court does not arise from legislative action, but is inherent in the court itself. [Citation omitted.] However, the practical effect is that no inherent power to punish for contempt exists in the district court in-

dependent of legislative regulation under K.S.A. 20-1201 *et seq.* If we were to hold otherwise, we would not only trespass on precedent but also endorse an unlimited inherent powers exception that could override regulation under K.S.A. 20-1201 *et seq.*, thus creating an unbridled power in individual judges to impose punishment." 263 Kan. at 355.

In *Jenkins*, we further explained that "[i]f the district court imposes sanctions for contempt of court, the procedure under K.S.A. 20-1201 *et seq.* regulates that power. No inherent power to punish for contempt exists independent of K.S.A. 20-1201 *et seq.*" 263 Kan. at 352. Thus, to impose a sanction against a contemnor, a court must follow the procedural requirements of K.S.A. 20-1201 *et seq.*

Here, Judge Shepherd stated that she was entering the sentence pursuant to the court's contempt authority in Chapter 20 of the Kansas statutes. M.R. does not allege that the district court failed to follow the required procedures, so this issue need not be addressed.

A. Criminal versus civil contempt.

In *Jenkins*, this court stated:

" ' "Civil contempt is the failure to do something ordered by the court for the benefit or advantage of another party to the proceeding." [Citation omitted.] Criminal contempt, by contrast, is "conduct directed against the dignity and authority of a court or a judge acting judicially, with punitive judgment to be imposed in vindication; its essence is that the conduct obstructs or tends to obstruct the administration of justice." [Citations omitted.]' " 263 Kan. at 358.

The State contends that the district court imposed sanctions for civil contempt, not a sentence for criminal contempt. We agree. Here, the sanctions imposed by the district court were clearly designed to coerce M.R. to comply with the court's earlier order that she attend school. "Civil contempt is a remedial or corrective action meant to coerce a party into action. The party in contempt can be confined until the court-ordered action is performed." 263 Kan. at 358. Therefore, this matter is a civil contempt.

In addition to the civil-criminal distinction, Kansas statutes divide contempts of court into two classes—direct and indirect. K.S.A. 20-1201. Direct contempts are those committed during the

sitting of the court or of a judge at chambers. All others are indirect contempts. K.S.A. 20-1202.

K.S.A. 2000 Supp. 20-1204a applies to indirect contempt procedures in both civil and criminal actions. It states, in pertinent part, that "[i]f the court determines that a person is guilty of contempt such person shall be punished as the court shall direct." K.S.A. 2000 Supp. 20-1204a(b).

"In a unique action of this type [contempt of court], we have a dual standard of review. We apply a de novo review to determine whether the alleged conduct is contemptuous. [Citation omitted.] We apply an abuse of discretion standard in reviewing the sanctions imposed. [Citation omitted.]" 263 Kan. at 356.

Fleske of Kaw Valley Center notified the court that M.R. continuously refused to attend school or to participate in any community service work. At the May 22 hearing, M.R. admitted that she had not gone to school or performed the community service work ordered by the district court for each hour of school she missed. M.R. does not challenge the district court's finding that she acted in indirect contempt of the court's order.

Reviewing M.R.'s conduct de novo, we find her conduct in indirect contempt of the district court's order for her to attend school or to perform community service in lieu thereof. Furthermore, we find that the court did not abuse its discretion when it imposed the sanctions of house arrest and school attendance. The Kansas Code for Care of Children (KCCC) K.S.A. 38-1501, defines a child in need of care as a person less than 18 years of age who "is not attending school as required by K.S.A. 72-977 or 72-1111." K.S.A. 38-1502d(a)(6). Considering M.R.'s history of truancy, running away, and engaging in other high-risk behaviors, the sanctions imposed by the district court were calculated to serve M.R.'s welfare and were in her best interest.

B. Imposition of contempt proceedings against a child.

As a general rule, statutes are construed to avoid unreasonable results. There is a presumption that the legislature does not intend to enact useless or meaningless legislation. *KPERS v. Reimer & Koger Assocs., Inc.*, 262 Kan. 635, 643, 941 P.2d 1321 (1997). In resolving this issue, we turn to the KCCC.

"K.S.A. 38-1501 through 38-1593 shall be known as and may be cited as the Kansas code for care of children and shall be liberally construed, to the end that each child within its provisions shall receive the care, custody, guidance, control and discipline, preferably in the child's own home, as will best serve the child's welfare and the best interests of the state. All proceedings, orders, judgments and decrees shall be deemed to have been taken and done in the exercise of the parental power of the state. Proceedings pursuant to this code shall be civil in nature." K.S.A. 38-1501.

If this court were to endorse the position taken by M.R. and hold that the district court could not impose the sanctions it did, the provisions of the KCCC would be rendered, to a large extent, meaningless. We are convinced the Kansas Legislature intended to grant the district court the authority to enforce orders entered in the best interest of a child in need of care, even through contempt proceedings, if necessary. Otherwise, children would be able to frustrate provisions for their care and welfare by petulantly declaring their refusal to cooperate with orders of the court. Therefore, we find that the district court had the power under 20-1201 *et seq.* to conduct contempt proceedings as it did.

The last issue for consideration is whether the passage of the KCCC allows a district court to impose the disposition of detention as a remedy for truancy. M.R. contends that under the KCCC, those children who commit crimes may be subject to punishment and detention, but that waywards, truants, and neglected children are not. M.R. asserts that treating truants as juvenile offenders is no longer allowed under the KCCC, and counsel for M.R. states that "no one counsel has spoken with can remember a truant being found in contempt and detained."

The interpretation of statutory provisions presents questions of law over which our review is unlimited. *Babe Houser Motor Co. v. Tetreault*, 270 Kan. 502, 506, 14 P.3d 1149 (2000).

Under K.S.A. 38-1594, "no child under 18 years of age shall be detained or placed in any jail pursuant to the Kansas code for care of children." A jail is defined as: "(1) An adult jail or lockup; or (2) a facility in the same building or on the same grounds as an adult jail or lockup, unless the facility meets all applicable standards and licensure requirements under law." K.S.A. 38-1502d(s).

The district court ordered that M.R. be placed under house arrest or detained in The Shelter where she was living. The Shelter does not meet the definition of a jail under the KCCC definition of the term, and, therefore, K.S.A. 38-1594 does not prohibit the court from imposing the sanction of detention in these circumstances.

M.R. also seems to contend that the KCCC prohibited her detention in the Day Detention School to force her to attend school because it is physically located in the Douglas County Juvenile Detention Facility, which houses juvenile offenders.

We disagree. Because the Day Detention School is not an adult jail or lockup and is not located on the same grounds as an adult lockup facility, K.S.A. 38-1594 does not prohibit the court from imposing the sanction of Day Detention School in order for M.R. to purge her indirect contempt.

Affirmed in part and remanded with directions.

DAVIS, J., not participating.

BRAZIL, Chief Judge Retired, assigned.█