(146 P.3d 1108)
No. 94,709

ASHLEY L. PUGH, *Appellant*, v. FLORENCIO GARCIA MUNGUIA, *Appellee.*

Opinion filed December 1, 2006.

*Timothy J. King*, of Speth & King, of Wichita, for the appellant.

*J. Franklin Hummer*, of Shawnee Mission, for the appellee.

Before MCANANY, P.J., PIERRON, J., and BRAZIL, S.J.

PIERRON, J.: Ashley L. Pugh appeals the district court's decision to vacate her claim for punitive damages. She argues her agreement with Florencio Garcia Munguia not to execute personally against him for any punitive damages awarded to her does not prevent her from maintaining a claim for punitive damages. Munguia argues that the agreement not to execute renders the punitive damages claim moot and against public policy. We affirm.

Munguia stopped his car at a stop sign, and after pausing long enough to let a child cross the street, he drove across the intersection in front of an oncoming car. Pugh, the driver of the oncoming car, could not stop in time and struck Munguia's car. Munguia fled the scene of the accident. A subsequent police incident report showed that Munguia had a blood alcohol level of .176, over twice the legal limit of .08. Pugh suffered head, neck, and back pain as a result of the collision. She sued Munguia to recoup medical expenses stemming from injuries she had sustained in the collision.

The district court granted Pugh's motion to amend her petition to allow for punitive damages against Munguia. The court based

its decision on Munguia's elevated blood alcohol level and the fact that he had fled the scene of the collision.

Pugh's and Munguia's attorneys held a conference call with the district court. Munguia's insurance company provided him with counsel, J. Franklin Hummer. Hummer discussed the possibility of Munguia stipulating to 100% of the liability for the accident and admitting liability for punitive damages. In return, evidence of Munguia's intoxication and flight from the scene of the accident would be excluded from the jury trial, and the jury would only hear evidence regarding the appropriate amount of compensatory damages. Pugh's counsel, Timothy J. King, requested that Munguia consult independent counsel before agreeing to the proposed stipulation.

Hummer hired attorney Thomas T. Inkelaar to consult with Munguia. Inkelaar and Munguia met for 1 to 1½ hours regarding the proposed stipulation. Inkelaar stated to the district court that he was acting independent of the insurance company in advising Munguia, although the insurance company was compensating him for his time. After the consultation, Munguia agreed to stipulate to 100% of the liability for the accident as well as to liability for punitive damages.

Hummer faxed a draft stipulation to the district court, Inkelaar, and King. On the same day, King faxed Inkelaar an offer not to execute directly against Munguia on any judgment awarded against him in exchange for *not* stipulating to liability for punitive damages. After consulting again with Munguia, Inkelaar accepted King's offer not to execute. Inkelaar immediately notified Hummer of the new arrangement and asked him to withdraw the stipulation of liability for punitive damages.

Hummer then moved to modify the stipulation to conform to Munguia's intention not to admit liability for punitive damages. In the same motion, Hummer moved to strike the claim for punitive damages altogether.

The district court held a telephone conference with Hummer and King regarding the motion to amend the stipulations. Both King and Hummer agreed to amend the stipulation to reflect that Munguia would admit 100% of the liability for the accident, but

not admit liability for punitive damages. Hummer then argued that allowing the punitive damages claim to proceed violated public policy.

Hummer argued that insurance companies were not responsible for punitive damages in Kansas. According to Hummer, because Pugh agreed not to execute on punitive damages against Munguia personally, and Kansas law prohibited her from collecting from the insurance company, the court should not permit the punitive damages claim to go forward. King countered that agreements not to execute are permitted under Kansas law, and so the punitive damages claim should proceed even if Pugh would not collect on it.

Permitting the punitive damages claim to proceed would enable King to put aggravating evidence in front of the jury—including Munguia's elevated blood alcohol level and flight from the scene—in the trial for compensatory damages.

The district court dismissed Pugh's claim for punitive damages as moot and against public policy. King filed an interlocutory appeal, which was denied by this court.

A jury trial was held to determine compensatory damages. The jury awarded Pugh $3,958.

On appeal, Pugh claims the district court abused its discretion in dismissing her punitive claim after she entered into a pretrial agreement with Munguia not to execute against him on any punitive damages that might be awarded.

A trial court judge has the discretion to grant a motion for punitive damages. See *Lindsey v. Miami County National Bank*, 267 Kan. 685, 689, 984 P.2d 719 (1999). Here, Munguia had a blood alcohol concentration over twice the legal limit and fled the scene of the accident. Based on these factors, the district court could reasonably find that a jury might determine punitive damages appropriate in this case.

After Pugh agreed not to execute on any punitive damages awarded against Munguia, however, Munguia moved to vacate the punitive damages claim. Pugh argues that her covenant not to execute on any punitive damages awarded does not prohibit her from seeking a judgment that includes punitive damages. Pugh distinguishes between an agreement not to execute on a judgment and

an agreement to release Munguia from liability for punitive damages. According to Pugh, simply because she will not collect punitive damages does not mean that the court should bar her from presenting evidence of Munguia's elevated blood alcohol level and flight from the scene of the accident at trial. Pugh cites *Glenn v. Fleming*, 247 Kan. 296, 799 P.2d 79 (1990), for the proposition that agreements not to execute on a judgment are permissible in Kansas.

The types of cases that have recognized either postjudgment or prejudgment agreements not to execute, however, have all been where there was a release from payment on the judgment for the defendant in return for exclusively seeking payment from the insurance company for a valid amount. In *Glenn*, we indorsed the reasoning in the prejudgment case of *Griggs v. Bertram*, 88 N.J. 347, 368, 443 A.2d 163 (1982), finding such agreements are enforceable so long as they are conditioned upon good faith and reasonableness. *Glenn*, 247 Kan. at 318.

In *Glenn*, the defendant had a claim of bad faith against his insurance carrier that he assigned to the plaintiff after a jury verdict had been reached. In return, the plaintiff agreed not to execute the judgment against the defendant personally. Neither *Glenn* nor any of the other cases cited in Pugh's brief involved mere maneuvering to accomplish otherwise impermissible ends, such as arguing punitive damages solely for the purpose of introducing aggravating evidence at trial to increase the award for compensatory damages. As the district court indicated in its decision: "[T]here is no legitimate way in which *any* punitive damage claim could be assessed to or collected from the insurance carrier" or anyone else in this case.

In a trial otherwise devoted to deciding compensatory damages, evidence of intoxication and flight would be irrelevant or unfairly prejudicial. *Cf. Ratterree v. Bartlett*, 238 Kan. 11, 18, 707 P.2d 1063 (1985) (evidence of the smell of alcohol on defendant's breath would be more prejudicial than probative in car accident case, even when fault was disputed, when police determined alcohol was not a contributing factor to accident). If there is no justification for determining the appropriateness of punitive damages, evidence

relevant only to that issue is superfluous. Pugh fails to explain why the court should permit her to pursue a "phantom" claim before the jury solely to permit admission of evidence that would otherwise be inadmissible or unduly prejudicial. Pugh does not have a right to pursue punitive damages:

" 'Punitive damages are not given upon any theory that the plaintiff has any just right to recover them, but are given only upon the theory that the defendant deserves punishment for his or her wrongful acts and that it is proper for the public to impose them upon the defendant.' " *Smith v. Printup*, 262 Kan. 587, 602, 938 P.2d 1261 (1997).

Had Pugh entered into a covenant not to execute with Munguia prior to filing her motion to add a claim for punitive damages, the district court would have been well within its discretion to deny the motion to amend in light of the covenant.

The district court reasonably based its decision on the purpose of punitive damages. Punitive damages serve two public purposes—punishment and deterrence. *Hartford Accident & Indem. Co. v. American Red Ball Transit Co.*, 262 Kan. 570, 574-75, 938 P.2d 1281, *cert. denied* 522 U.S. 951 (1997). Kansas public policy requires that payment of punitive damages " ' "rest ultimately as well as nominally on the party who committed the wrong; otherwise they would often serve no useful purpose. The objective to be attained in imposing punitive damages is to make the culprit feel the pecuniary pinch, not his guiltless guarantor." ' [Citation omitted.]" 262 Kan. at 575 (quoting *St. Paul Surplus Lines Ins. Co. v. International Playtex, Inc.*, 245 Kan. 258, 777 P.2d 1259 [1989]). In fact, Kansas public policy opposes insurance coverage for punitive damages. 262 Kan. at 585.

The district court held that no public policy purpose would be achieved by allowing a claim for punitive damages in this case. As the court noted, neither party's position ultimately changes as a result of allowing or disallowing punitive damages. The dual purposes of punishment and deterrence are avoided by the agreement not to execute against the defendant, and public policy prevents recovery for punitive damages from the insurance company. Punitive damages serve no useful purpose in this context.

Consequently, Pugh's agreement with Munguia not to collect punitive damages renders the issue of punitive damages moot. "An appeal will not be dismissed as moot unless it clearly and convincingly appears the actual controversy has ceased and the only judgment which could be entered would be ineffectual for any purpose and an idle act insofar as rights involved in the action are concerned." *In re M.R.*, 272 Kan. 1335, Syl. ¶ 2, 38 P.3d 694 (2002). Here, Munguia has indeed shown "clearly and convincingly" that any judgment entered into would be ineffectual. Even if this appeal were granted, a new trial would not change the positions of the parties. Neither party disputes the amount of compensatory damages awarded by the jury, and there is no one against whom to enforce an award of punitive damages.

Pugh has not been legally harmed by the district court's decision in this case. Even if there were some error in vacating the claim for punitive damages, the error would be harmless. Harmless error is error which does not prejudice the substantial rights of a party. It affords no basis for reversal of a judgment and must be disregarded. *Printup*, 262 Kan. at 603. Pugh does not argue on appeal that the amount of compensatory damages is contrary to the record. In fact, the jury's verdict clearly covered her medical bills.

Last, Pugh is not arguing that the agreement not to execute is somehow invalid. Both parties recognize that Pugh is prohibited by Kansas law from recouping punitive damages from the insurance company. Pugh made a strategic decision in this case to enter a nonexecute agreement; this is not an error by the district court. A new trial to redetermine the compensatory damages is unnecessary. There is no relief that the appellate court can provide, and the district court's ruling is affirmed.

Affirmed.