No. 51,844

STATE OF KANSAS, *ex rel.,* ROBERT T. STEPHAN, Attorney General, *Appellant,* v. PHILIP W. MARTIN, Director of Property Valuation, Kansas Department of Revenue, *Appellee.*

(608 P.2d 880)

Opinion filed March 14, 1980.

*Rodney J. Bieker,* assistant attorney general, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the briefs for the appellant.

*Carol B. Bonebrake,* of Kansas Department of Revenue, argued the cause, and *Alan F. Alderson,* general counsel, *Clarence J. Malone,* and *William L. Edds,* all of Kansas Department of Revenue, were with her on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is an appeal by the Attorney General in a declaratory judgment action from a decision of the district court upholding the constitutionality of K.S.A. 1979 Supp. 79-342. The sole issue on appeal is whether that statute violates art. 11, § 1 of the Kansas Constitution.

The facts are stipulated. The Kansas Legislature in 1978 enacted K.S.A. 79-341 and 342 in response to cries for ad valorem tax relief for the State's farmers and ranchers. In 1979 the legislature enacted a minor amendment to 79-342. On November 7, 1979, the Attorney General (plaintiff-appellant) initiated this ac-

tion in the District Court of Shawnee County at Topeka, Kansas, against Philip W. Martin, Director of Property Valuation, Kansas Department of Revenue (defendant-appellee). The petition sought a declaratory judgment that K.S.A. 1979 Supp. 79-342 violated art. 11, § 1 of the Kansas Constitution. The case was submitted to the trial court on a stipulated record and written briefs. On December 31, 1979, the trial court upheld the constitutionality of K.S.A. 1979 Supp. 79-342 in a memorandum opinion. Appeal was duly perfected to the Court of Appeals. On January 25, 1980, on motion of appellant, and in accordance with the authority granted by K.S.A. 1979 Supp. 20-3017, this case was transferred to the Supreme Court and set for hearing on February 28, 1980.

Article 11, § 1 of the Kansas Constitution is the fundamental law against which the validity of K.S.A. 1979 Supp. 79-342 must be tested. In clear and simple language that fundamental law vests the State's taxing authority in the legislature, stating:

"The legislature shall provide for a uniform and equal rate of assessment and taxation, except that the legislature may provide for the classification and the taxation uniformly as to class of motor vehicles, mineral products, money, mortgages, notes and other evidence of debt or may exempt any of such classes of property from property taxation and impose taxes upon another basis in lieu thereof. All property used exclusively for state, county, municipal, literary, educational, scientific, religious, benevolent and charitable purposes, and all household goods and personal effects not used for the production of income, shall be exempted from property taxation."

In response to the constitutional command to provide for a *uniform and equal rate of assessment and taxation* the legislature has enacted many statutes. Among the statutes material to a decision herein are the following:

K.S.A. 79-501 provides:

"Each parcel of real property shall be appraised at its fair market value in money, the value thereof to be determined by the assessor from actual view and inspection of the property; but the price at which such real property would sell at auction or forced sale shall not be taken as the criterion of such fair market value in money. Tangible personal property shall be appraised at its fair market value in money at the place where the same may be held. All such real and tangible personal property shall be appraised at its fair market value in money and assessed as required in K.S.A. 79-1439."

K.S.A. 79-1406 provides:

"All property, real or personal, shall be appraised at its fair market value in

money, and all real and tangible personal property which is subject to general property taxes shall be assessed at its fair market value in money as required in K.S.A. 79-1439."

## K.S.A. 79-1439 provides in pertinent part:

"[A]ll real and tangible personal property which is subject to general property taxes shall be appraised uniformly and equally at its fair market value in money, as defined in K.S.A. 79-503, and assessed at thirty percent (30%) thereof."

## K.S.A. 79-503, in pertinent part, provides for the determination of fair market value in money as follows:

"Fair market value in money shall mean the amount of money that a well informed buyer is justified in paying and a well informed seller is justified in accepting, assuming that the parties thereto are acting without undue compulsion and that the property has been offered at the market place for a reasonable length of time. Sales in and of themselves shall not be the sole criteria of fair market value but shall be used in connection with cost, income and such other factors as may be appropriate including but not by way of exclusion:

"(a) The proper classification of lands and improvements;

"(b) the size thereof;

"(c) the effect of location on value;

"(d) depreciation, including physical deterioration or functional, economic or social obsolescence;

"(e) cost of reproduction or improvements;

"(f) productivity;

"(g) earning capacity as indicated by lease price or by capitalization of net income;

"(h) rental or reasonable rental values;

"(i) sale value on open market with due allowance to abnormal inflationary factors influencing such values; and

"(j) comparison with values of other property of known or recognized value. The ratio study shall not be used as an appraisal for appraisal purposes."

## K.S.A. 75-5105a instructs the Director of Property Valuation of the State Department of Revenue to render assistance and provide certain assessment tools to all county and district appraisers. In pertinent part, 75-5105a(b) provides that the director shall:

"*Devise and/or prescribe guides showing fair market value in money of personal property.* The director of property valuation shall furnish to each county one copy of each guide so prescribed and a copy or copies, at said director's discretion, of each guide so devised. In the preparation of such guides, the director of property valuation shall confer with representatives of the county appraisers and district appraisers, *and shall seek counsel from official representatives of organized groups interested in and familiar with the value of classes of property with which they are concerned.*" (Emphasis added.)

The two statutes which gave birth to this dispute, K.S.A. 1979 Supp. 79-341 and 342, provide as follows:

"79-341. Valuation of farm machinery and equipment; purpose of act. [1] Inasmuch as the economy of this state is based, to a large extent, on agriculture, and inasmuch as *the economy of the individual farmers and ranchers in this state is placed in jeopardy as a result of the increase in the fair market value of their machinery and equipment,* [2] it is therefore declared that the *purpose* of this act shall be *to establish the fair market value* of farm machinery and equipment *for the purpose of taxation and avoid accentuating the impact of the severe economic crisis confronting such persons.* [3] It is also the *purpose* of this act to provide administrative relief to county appraisers, county clerks, county commissioners, and the state board of tax appeals who are faced with an overwhelming deluge of tax appeals and tax protests *resulting from the market value appraisal of farm machinery and equipment.*

"79-342. Same; method to be utilized in determining valuation for 1979 tax year. (a) (1) For the purpose of determining the fair market value of farm machinery and equipment for the year 1979, the county appraiser shall *utilize the estimated average values of such property as indicated by the 1979 Kansas appraisal guide for farm machinery and equipment* as devised or prescribed by the director of property valuation *and shall subtract from such values an amount equal to twenty percent (20%) thereof.*

"(2) It shall be the duty of the county appraiser to value all farm machinery and equipment utilizing the values established under the provisions of part (1) of this subsection except that the appraiser shall deviate from the value so established when he or she determines that the value assigned to such property in accordance with part (1) of this subsection *does not reflect the fair market value of the particular property involved as provided for by part (1) of this subsection.*

"(b) The term 'farm machinery and equipment' means that personal property *used by the owner thereof in conducting a farming or ranching operation.* The term 'farm machinery and equipment' shall not include any passenger vehicle, truck, truck tractor, trailer, semitrailer or pole trailer, other than a farm trailer, as said terms are defined by K.S.A. 1979 Supp. 8-126 and amendments thereto." (Emphasis and numbers in brackets are added to facilitate further discussion.)

Article 11, § 1 is probably one of the most litigated provisions of the Kansas Constitution; it has been amended three times since the original version was adopted in 1859 at the Wyandotte Convention. One of the earliest decisions by this Court interpreting the meaning of art. 11, § 1 was *Hines et al. v. City of Leavenworth et al.,* 3 Kan. *186 (1865). Explaining the meaning of uniform and equal assessment, the Court stated:

*"Each man in the State, county and city, is equally in proportion to his property interested in maintaining the State, county and city governments, and in that proportion should bear the burden equally.* There is a justice in this arrangement which commends it to the approbation of any right thinking man . . . ." 3 Kan. °201-02. (Emphasis added.)

In 1915 the Court had occasion to review many of our prior

decisions interpreting art. 11, § 1. In *Wheeler v. Weightman,* 96 Kan. 50, 58, 149 Pac. 977 (1915) this following statement was made:

"The foregoing decisions, covering the period of the state's history to the year 1900, are full, clear, consistent with each other, and indubitably sound. The doctrine they announce was the one with which the people were familiar when the constitution was framed, and the work of the constitutional convention consisted principally in stating the doctrine in suitable phraseology. The essentials are that each man in city, county, and state is interested in maintaining the state and local governments. The protection which they afford and the duty to maintain them are reciprocal. The burden of supporting them should be borne equally by all, *and this equality consists in each one contributing in proportion to the amount of his property.* To this end all property in the state must be listed and valued for the purpose of taxation, the rate of assessment and taxation to be uniform and equal throughout the jurisdiction levying the tax. The imposition of taxes upon selected classes of property to the exclusion of others, and the exemption of selected classes to the exclusion of others, constitute invidious discriminations which destroy uniformity. *That the system works badly now is ground for change, but the system having been established by the constitution as a limitation on the power of the legislature, the constitution must be changed before the system can be changed."* (Emphasis added.)

The legislature eventually responded to the decision in *Wheeler,* and in 1924 an amendment to art. 11, § 1 was adopted. The amendment, *inter alia,* permitted classification of mortgages for taxation under the exception to the "uniform and equal rate of assessment and taxation." Attempted exemption of mortgages from taxation was the basis of the action in *Wheeler.*

Here we are confronted with an unsatisfactory method of assessing and taxing farm and ranch machinery as part of the ad valorem tax plan. For the reasons hereafter assigned we must repeat now what the Supreme Court said in *Wheeler:* "the constitution must be changed before the system can be changed."

This Court has repeatedly held that art. 11, § 1 of the Kansas Constitution requires the legislature to provide for uniformity in the basis of assessment as well as in the rate of taxation. Uniformity in taxing implies equality in the burden of taxation. *Gordon v. Hiett,* 214 Kan. 690, 693, 522 P.2d 942 (1974); *Northern Natural Gas Co. v. Bender,* 208 Kan. 135, 143, 490 P.2d 399 (1971), *cert. denied* 406 U.S. 967 (1972); *Commercial National Bank v. Board of County Commissioners,* 201 Kan. 280, 286, 440 P.2d 634 (1968); *Addington v. Board of County Commissioners,* 191 Kan. 528, Syl. ¶ 3, 382 P.2d 315 (1963).

The foregoing cases stand for the proposition that all property

which is subject to general property taxation must be valued or assessed on an equal basis. In the recent case of *State ex rel. Schneider v. City of Topeka,* 227 Kan. 115, Syl. ¶ 5, 605 P.2d 556 (1980), this principle is acknowledged where the Court states:

"When the rate of property assessment is uniform throughout a taxing district, the constitutional mandate of uniform and equal taxation has been fulfilled."

The term "assessment" as employed in art. 11, § 1 means the process of listing and valuing property for taxation. See *Commercial National Bank v. Board of County Commissioners,* 201 Kan. 280, Syl. ¶ 3; *Wheeler v. Weightman,* 96 Kan. at 53.

The legislature, in responding to the mandate of art. 11, § 1 of the Kansas Constitution that it provide for a uniform and equal rate of assessment and taxation, has provided that all property subject to taxation be valued on an equal basis. The equal basis currently provided by the legislature is "fair market value in money." "Fair market value" has a well defined meaning in our free economy and in case law. The legislature defined "fair market value" in K.S.A. 79-503 in substantially the same language as this Court has defined it, and as it is generally understood and accepted. *Mobil Pipeline Co. v. Rohmiller,* 214 Kan. 905, 926, 522 P.2d 923 (1974).

In the case at bar, the crucial inquiry is the legislative intent and purpose for enacting K.S.A. 1979 Supp. 79-342. The trial court's statement that judicial construction of legislation should be based on legislative intent, to be determined from the whole act, and should be in accordance with the general intent and purpose of the entire statute, is unquestionably correct. However, the trial court's conclusion, that the legislative intent and purpose for the enactment of 79-342 was to insure that farm machinery and equipment would be appraised uniformly and equally at its fair market value in money, is incorrect. There is no basis in fact for such conclusion.

The legislature, in 79-342, directs the county appraisers of this State *to reduce* the values of certain farm machinery and equipment contained in the 1979 Kansas Appraisal Guide, *by subtracting from such values an amount equal to 20% thereof.* Consider, for example, the effect of this law upon the value assigned in the 1979 Kansas Appraisal Guide for an "ALLIS-CHALMERS 7580 D*" tractor, model year 1978. The value listed in the guide for all such Allis-Chalmers tractors is $35,420. Pursuant to the provi-

sions of 79-342(*a*)(1), that value is to be reduced by $7,084 ($35,420 times 20%). Thus, the value determined for all such tractors in average condition, if used in farming and ranching operations, is $28,336, instead of $35,420. (Pursuant to K.S.A. 79-1439, $28,336 is then multiplied by 30% to arrive at the assessed valuation.) The effect of a flat, across-the-board reduction of 20% refutes the Director's contention that this method of assessment was designed by the legislature to achieve the ultimate goal of valuing all property upon an equal basis.

It is admitted by the Director that pursuant to K.S.A. 75-5105a(*b*) *the Director of Property Valuation is required to devise or prescribe guides showing the fair market value in money* of the tangible personal property here in question. In the absence of evidence to the contrary, the Director is presumed to have followed the statutory requirements. Hence, the 1979 Kansas Appraisal Guide established the fair market value in money of farm machinery and equipment in average condition, in accordance with K.S.A. 79-503 and 75-5105a(*b*).

In 79-341, the legislature expressly declared the purpose for the enactment of 79-342 was "to establish the fair market value of farm machinery and equipment *for the purpose of taxation.*" (No. 2, emphasis added.) The legislature specifically stated "the economy of the individual farmers and ranchers in this state is placed in jeopardy *as a result of the increase in the fair market value of their machinery and equipment.*" (No. 1, emphasis added.) It must be noted that "the increase in the fair market value of their machinery and equipment" as established in the 1979 Kansas Appraisal Guide is nevertheless "the fair market value in money" of such farm machinery and equipment determined pursuant to K.S.A. 79-503.

If the legislature itself had established the fair market value in money for farm machinery and equipment, in accordance with its own directive in K.S.A. 79-503, what factors were the appraisers to use *in deviating* from the value established by the legislature (K.S.A. 1979 Supp. 79-342[*a*][2])? An apparent inconsistency between 79-342(*a*)(1) and (*a*)(2) is explained by careful analysis of the 1979 Kansas Appraisal Guide and the provisions of 79-342(*a*)(2). On the inside cover of the 1979 Kansas Appraisal Guide is a statement by the Director reading as follows:

"This Kansas Appraisal Guide is furnished in accordance with K.S.A. 75-5105a

part b. The values listed herein represent *market value for property in average condition."* (Emphasis added.)

It is obvious that a piece of farm machinery or equipment of a given model and year may vary considerably in its fair market value, depending upon the use to which the particular piece of farm machinery or equipment has been put. One piece of machinery may be almost completely worn out from use in farming and another by reason of lack of use on a farm may be in almost new condition. The county appraiser is permitted by 79-342(*a*)(2) *to deviate* from the value established pursuant to 79-342(*a*)(1), *where the appraiser utilizes "the estimated average values of such property."* In fact, *this deviation* is permitted by 79-342(*a*)(2) *only* when it is determined that "the value assigned to such property in accordance with part (1) of this subsection does not reflect the fair market value of the particular property involved *as provided for by part (1) of this subsection."* (Emphasis added.) The fair market value of the particular property involved as provided for by part (1) in 79-342(a) requires that 20% be subtracted from the value of such property as determined from the 1979 Kansas Appraisal Guide.

The legislature in stating the purposes for the enactment of 79-342, expressly found in 79-341 that "the economy of the individual farmers and ranchers in this state is placed in jeopardy as a result of the increase in the fair market value of their machinery and equipment." (No. 1.) It therefore declared the purpose of the act to be "to establish the fair market value of farm machinery and equipment *for the purpose of taxation and avoid accentuating the impact of the severe economic crisis confronting such persons."* (No. 2, emphasis added.) It also declared an additional purpose was "to provide administrative relief to county appraisers, county clerks, county commissioners, and the state board of tax appeals who are faced with an overwhelming deluge of tax appeals and tax protests *resulting from the market value appraisal of farm machinery and equipment."* (No. 3, emphasis added.)

The legislature was granting relief *to persons—the owners of farm machinery and equipment—who were confronted with a severe economic crisis.* The legislature found the crisis resulted in protests from individual farmers and ranchers concerning *the market value appraisal of their farm machinery and equipment.*

It is important to note the legislature in declaring the purposes for the enactment (79-342) recognized the appraisal of farm machinery and equipment owned by the farmers and ranchers was at its fair market value in money in accordance with prior existing legislation.

It could not be said, with propriety, that the increase in the fair market value of farm machinery and equipment which concerned the legislature, and which prompted it to enact 79-342, was caused by the Director of Property Valuation improperly adding to the values of farm machinery and equipment set forth in the previous year's appraisal guide. It is clear, however, that some increase in the fair market value of farm machinery and equipment prompted the legislature to enact 79-342. That increase resulted from the amount of money that a willing buyer was justified in paying and a willing seller was justified in accepting for such farm machinery and equipment. *In short, the fair market value in money of farm machinery and equipment,* as defined by this Court (see *Mobil Pipeline Co. v. Rohmiller,* 214 Kan. at 926), and as defined in K.S.A. 79-503, *was increasing.* Notwithstanding this fact, in 79-342 a flat, across-the-board 20% reduction in valuation was ordered. The effect of that was not to correct an error, it was to *lower the fair market value in money of farm machinery and equipment* used by the owner thereof in conducting a farming or ranching operation.

Even if it be assumed that the 1979 Kansas Appraisal Guide was in error, and that the legislative purpose was, in fact, to correct the situation, the provisions of 79-342 would correct the error for some, but not all, owners of identical items of machinery and equipment. By the provisions of 79-342(*b*) the 20% reduction in valuation was limited to only designated items of farm machinery and equipment, *i.e.,* "personal property used by the owner thereof in conducting a farming or ranching operation." As a result, the same items of machinery and equipment listed in the 1979 Kansas Appraisal Guide will be valued differently by the county appraiser, depending upon the use made of such machinery and equipment by its owners. The value of the various items of property listed in the 1979 Kansas Appraisal Guide have been determined irrespective of the owner's use. For example, under the 1979 Kansas Appraisal Guide, there is but a single value established for a specified horse trailer; the value of such

horse trailer is the same whether it is used by its owner in a farming or ranching operation or used by its owner for some other purpose.

The appraisal guide is a reflection of the marketplace, recognizing that the value of an item of property is based upon the price a willing buyer is justified in paying to a willing seller. The occupation in which such property has been used by the seller is immaterial in determining the fair market value of such property. The use of an item of property may affect the condition of the property, but that fact is accounted for in the appraisal guide, which reflects the fair market value in money of property in *average* condition.

This law is inseparably linked to the appraisal guide; if the legislature found the guide was wrong, action should have been taken to correct the guide. By limiting the application of this law to property used by the owners thereof in conducting a farming or ranching operation the broad class of all property listed in the guide was ignored, *and a subclass was created,* consisting of tangible personal property used in a prescribed manner by its owners.

A finding that a subclassification of property was justified because of "the severe economic crisis" confronting individual farmers and ranchers confuses *economic conditions* affecting property *owners* with *economic factors* affecting the *value* of property. Such reasoning confuses the *ad valorem property tax* with the *income tax.* Unlike the income tax, the property tax is based on the *value* of the property *itself,* not on the *income or economic condition* of the property's owner. See *Callaway v. City of Overland Park,* 211 Kan. 646, 651, 508 P.2d 902 (1973), where the Court states: "An *ad valorem tax* is a tax imposed upon the basis of *the value of the article or thing taxed."* (Emphasis added.)

K.S.A. 79-503(*d*) requires that the appraiser, in determining the fair market value in money of an item of property, consider "depreciation, including physical deterioration or functional, economic or social obsolescence." That factor affecting the value of the property does not include *economic conditions confronting the owners of property.* The unprofitable nature of a business, that is, the adverse economic conditions confronting the owner of a business, is not the same as the economic factor of functional, economic or social obsolescence which affects the value of the

property itself. See *Northern Natural Gas Co. v. Dwyer,* 208 Kan. 337, 356-57, 492 P.2d 147 (1971), *cert. denied* 406 U.S. 967 (1972).

Therefore, it is abundantly clear the factor of functional, economic or social obsolescence to be considered in valuing property does not justify the discriminatory subclassification established by the provisions of 79-342.

The Director also argues that K.S.A. 79-503(*i*) is a factor to be taken into consideration in determining the fair market value in money of property. It provides that among the factors to consider in determining fair market value is the "sale value on open market with due allowance to abnormal inflationary factors influencing such values." There are two reasons why this factor does not justify the unlawful subclassification created in 79-342. First, the Court can take judicial knowledge of the fact that even though there has been an inflation of property values in recent years, the rate of inflation was not 15% in 1978, nor was it 20% in 1979. Thus, neither the fixed percentage rate reduction ordered by the provisions of 79-342, nor those of its predecessor, K.S.A. 1978 Supp. 79-342, can be justified on the basis of the inflation rate. Second, to shield certain property, that is, "farm machinery and equipment," from the effects of inflation, when inflation is affecting all property, is an act of discrimination, inconsistent with art. 11, § 1 of the Kansas Constitution.

Based upon all the foregoing reasons, the Director's attempt to justify the enactment of K.S.A. 1979 Supp. 79-342 must be rejected, as the law is inconsistent with the provisions of art. 11, § 1 of the Kansas Constitution. By destroying the constitutionally required uniformity and equality in the assessment of all property, a partial exemption from taxation has been granted to farm machinery and equipment. The effect is to lessen the tax burden that should be borne by such property, all for the purpose of reducing the property tax liability of some owners of farm machinery and equipment.

The principle of "partial exemptions" was explained by the United States Supreme Court in *Huntington v. Worthen,* 120 U.S. 97, 101, 30 L.Ed. 588, 7 S.Ct. 469 (1887), where the Court said:

"The assessment of property, that is, the appraisement and estimate of its value, is the basis upon which the amount of the tax is fixed. A law, therefore, omitting from assessment portions of any particular property, *thus lessening the estimate of its value, has the effect of exempting it to that extent from taxation.* That result cannot be accomplished, as well observed by the Supreme Court of the state,

[Arkansas] under the guise of regulating the duties of assessors." (Emphasis added.)

The ultimate effect of 79-342 was to lessen the legitimate estimate of the fair market value in money of certain items of farm machinery and equipment, and thus, exempt it to that extent from taxation. In this respect the law violates the requirement of art. 11, § 1 of the Kansas Constitution mandating uniformity and equality in the basis of assessment.

The introductory clauses of 79-341 clearly indicate that 79-342 was an attempt to aid the economy of the individual farmers and ranchers in this State, in order to avoid accentuating the impact of the economic crisis confronting such persons. However, art. 11, § 1 of the Kansas Constitution prohibits favoritism, and requires uniformity in valuing property for assessment purposes so that the burden of taxation will be equal. *Addington v. Board of County Commissioners,* 191 Kan. at 532; *Wheeler v. Weightman,* 96 Kan. at 58; *Hines, et al. v. City of Leavenworth et al.,* 3 Kan. *186, Syl. ¶ 5. Property taxation is not based upon the owner's ability to pay. Economic distress is no justification for ignoring the constitution.

Accordingly, it is held the provisions of K.S.A. 1979 Supp. 79-342 destroy the uniformity and equality in the rate of assessment of tangible personal property required by art. 11, § 1 of the Kansas Constitution and are therefore void. The act grants a partial exemption from taxation to certain items of farm machinery and equipment, according preferential tax treatment to some owners of such property, in violation of art. 11, § 1 of the Kansas Constitution.

The judgment of the lower court is reversed.